CASE 0:26-cv-02447-PJS-DTS   Doc. 9   Filed 05/26/26   Page 1 of 10

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LUIS A.S.,                                              Case No. 26-CV-2447 (PJS/DTS)

                    Petitioner,

v.                                                     ORDER

DAVID EASTERWOOD, Field Office
Director of Enforcement and Removal
Operations, St. Paul Field Office,
Immigration and Customs Enforcement;
MARKWAYNE MULLIN, in his official
capacity as Secretary of the U.S.
Department of Homeland Security; TODD
LYONS, in his official capacity as Acting
Director of U.S. Immigration and Customs
Enforcement; TODD BLANCHE, in his
official capacity as Acting Attorney General
of the United States; and ERIC
TOLLEFSON, Kandiyohi County Sheriff,

                    Respondents.

Solomon Daniel Steen, CONTRERAS EDIN LAW, P.A., for petitioner.

Ebony N. Thomas and David W. Fuller, UNITED STATES ATTORNEY'S
OFFICE, for all respondents except Eric Tollefson.

This matter is before the Court on petitioner Luis A.S.'s petition for a writ of

habeas corpus.[1]  Luis, a citizen of Guatemala, entered the United States without

inspection in May 2023.  Pet. ¶¶ 1, 6, ECF No. 1.  Luis has no known criminal history,

---

[1]Pursuant to this District's policy in immigration cases, the Court identifies
petitioner only by his first name and last initials.

and his first contact with Immigration and Customs Enforcement ("ICE") occurred on April 8, 2026, when ICE agents arrested him while he was riding his bike in Fargo, North Dakota. *Id.* ¶¶ 22–28; *see also* Robinson Decl. Ex. B. at 2, ECF No. 7-2.

Following Luis's arrest, he was transported to an ICE facility in Grand Forks, North Dakota. *See* Robinson Decl. Ex. B at 2–3. There, Luis was served with a Notice to Appear ("NTA") charging him as inadmissible under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). Robinson Decl. Ex. C at 4, ECF No. 7-3. Luis is currently being detained at the Kandiyohi County Jail in Willmar, Minnesota. Pet. ¶¶ 27–28.

Respondents aver—and Luis agrees—that Luis is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), given the Eighth Circuit's recent interpretation of that statute in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). *See* ECF No. 6 at 4–5, 9; Pet. ¶¶ 83, 87, 99. Luis argues, however, that even though he is subject to mandatory detention under § 1225(b)(2)(A), his current detention is nevertheless unlawful because ICE had "no valid statutory authority for [his] initial arrest." Pet. ¶ 129.

*A. Statutory Framework: ICE's Arrest Authority*

Like any federal agency, ICE "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *Fed. Election Comm'n v. Ted Cruz for Senate*, 596 U.S. 289, 301 (2022) (quotation omitted). Through the Immigration and Nationality Act ("INA"), Congress provided two mechanisms by

which "it is appropriate to arrest an alien during the removal process." *Arizona v. United States*, 567 U.S. 387, 407 (2012).  First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).  Second, ICE has "limited authority" to make warrantless arrests. *Arizona*, 567 U.S. at 408.  Specifically, an immigration officer may arrest an alien without a warrant for being "'in the United States in violation of any [immigration] law or regulation,' . . . but only where the alien 'is likely to escape before a warrant can be obtained.'" *Id.* (quoting 8 U.S.C. § 1357(a)(2)) (first alteration in original).[2]

Respondents argue that Luis was arrested pursuant to a warrant—and, in support of their argument, respondents submitted a Form I-200 administrative warrant. That warrant reflects ICE's belief that it had authority to arrest Luis under 8 U.S.C. §§ 1226(a) and 1357(a)(2).  *See* Robinson Decl. Ex. A, ECF No. 7-1.  The warrant is directed to "[a]ny immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act and part 287 of

---

[2]Although *Avila* makes clear that Luis is subject to mandatory detention under § 1225(b)(2), *Avila* says nothing relevant to the lawfulness of Luis's arrest preceding his detention. *See Avila*, 170 F.4th at 1133 n.3 ("[W]arrantless arrests of aliens . . . [are] not at issue here.").  In *Avila*, ICE "encountered [the petitioner] during a traffic stop, during which he admitted that he had entered the country illegally and lacked documents authorizing his admission." *Avila*, 170 F.4th at 1332.  The petitioner was then (presumably) arrested on the spot without a warrant.  But the petitioner challenged only the statutory basis for his detention, not the lawfulness of the preceding arrest.

title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." *Id.*; *see also* ECF No. 6 at 4 (citing both 8 U.S.C. § 1225(b)(2) and 8 U.S.C. § 1357 as the statutes authorizing "the arrest and detention of noncitizens pending removal proceedings"); ECF No. 8 at 4 (arguing that § 1225(b) does not grant arrest authority and noting that the word "arrest" does not appear in the statute).

The question, then, is whether the ICE agents who arrested Luis (1) had a valid administrative warrant under 8 U.S.C. § 1226(a), or (2) had probable cause to believe that Luis was unlawfully in the United States and "likely to escape before a warrant c[ould] be obtained for his arrest" under 8 U.S.C. § 1357(a)(2).  The Court addresses each question in turn.

### B.  Arrest Pursuant to Form I-200 Administrative Warrant

Although Luis alleges in his petition that his arrest was warrantless, Pet. ¶ 26, respondents introduced, as an exhibit, a Form I-200 administrative warrant for Luis issued on April 8, 2026—the same day as his arrest, Robinson Decl. Ex. A; *see also* ECF No. 8 at 19 (conceding that "Respondents produced a contemporaneous warrant," but arguing that the warrant "is fatally defective").  The warrant bears the semi-illegible signature of an "Authorized Immigration Officer"—apparently an officer named "O. Martinez"—who had "determined that there is probable cause to believe that [Luis] is removable from the United States."  Robinson Decl. Ex. A.  Officer Martinez's probable-

cause determination was reportedly based on "biometric confirmation of the subject's identity and a records check of federal databases," as well as "statements made voluntarily by the subject to an immigration officer," which together "indicate[d] the subject lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id.* The warrant finally states that it was served on Luis on the same day it was issued—April 8, 2026—and that its contents were read to Luis in English. *Id.*

The Court questions the accuracy of the statements made by Officer Martinez. As far as the record reflects, Luis never had contact with an immigration official before the moment he was arrested. *See* Pet. ¶ 22. Moreover, respondents appear to concede that the warrant was issued in the field—in fact, they seem to rely on this fact as support for their probable-cause argument. ECF No. 6 at 10 (noting that the warrant was served "only after Petitioner stated that he did not have any legal documents to be in the United States"); *cf. Castañon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2026 WL 1223250, at *6 (7th Cir. May 5, 2026) (noting that "ICE had implemented a policy of issuing defective I-200 warrants in the field to avoid its obligations under § 1357(a)(2)"). It is therefore difficult to understand how the warrant could be based on Luis's "biometric information" or any information that an immigration officer would have had about Luis prior to his arrest. Robinson Decl. Ex. A; *see also Francisco M.A. v. Blanche*, No. 26-CV-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026) (finding a

warrant invalid, in part, because "Petitioner's biometric information could only have been confirmed *after* Petitioner had been taken into ICE's custody") (emphasis added).[3]

Putting that aside, a Form I-200 administrative warrant is not valid unless it is issued "[a]t the time of issuance of the notice to appear, or at any time thereafter." 8 C.F.R. § 236.1(b)(1); *see also Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026) ("Respondents may arrest a noncitizen using a Form I-200 only if the Form I-200 issues at the same time or after the Department of Homeland Security issues an NTA.");  *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2 (D. Minn. Feb. 20, 2026) (same).  This is because an NTA is a "case-initiating pleading[]"—"like an indictment in a criminal case"—that "serves as the basis for commencing a grave legal proceeding."  *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (quotation omitted); *see also* 8 U.S.C. § 1229(a)(1) (stating that ICE "shall" give aliens in removal proceedings "written notice" of the proceedings in the form of a "notice to appear").

---

[3]The warrant also claims probable cause based on "statements made voluntarily by the subject," Robinson Decl. Ex. A, but Luis denies that he made any statements to the arresting officers or that he voluntarily provided his identification, *see* Pet. ¶¶ 24–25 (alleging that ICE agents "grabbed [Luis], pushed him to the ground, and pulled his identification out of his pocket" when Luis failed to "verbally respond" when the agents asked "if he was illegal"); *but see* Robinson Decl. Ex. B (stating that Luis "presented [the ICE agents] with a Guatemalan ID card").

Although § 236.1(b)(1) "is likely satisfied if the Notice to Appear is issued contemporaneous with the arrest warrant, even if the latter *momentarily* precedes the former[,] [t]his is not . . . what happened here." *Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927 (S.D. Iowa 2026) (concluding that ICE did not have lawful authority to arrest a petitioner—despite an otherwise valid warrant—because the "Notice to Appear was not issued until some unspecified time later in the day" after the petitioner's arrest) (emphasis added).  Like the Form I-200, Luis's NTA was both issued and served on April 8, 2026.  *See* Robinson Decl. Exs. A–C.  But *unlike* the Form I-200, which states it was served in Fargo (where Luis was arrested), the NTA states it was issued in Grand Forks (where Luis was processed, interviewed, and detained *after* his arrest).  Robinson Decl. Ex. C at 1, 3.

The gap in time and location between Luis's arrest and the issuance of the NTA is critical.  The Form I-200 warrant empowers ICE to arrest aliens *during* removal proceedings.  *See* 8 C.F.R. § 236.1(b)(1); 8 U.S.C. § 1226(a).  A warrant issued *before* removal proceedings have begun therefore purports to exercise authority that does not yet exist.  *See, e.g.*, *Gonzalez Ochoa*, 816 F. Supp. 3d at 927 ("The temporal aspects of this language are clear:  an arrest warrant may be issued '[a]t the time of issuance' of the Notice to Appear or 'thereafter.'  Not 'before.'") (quoting 8 C.F.R. § 236.1(b)(1)); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 853–54 (N.D. Ill. 2025),

-7-

*aff'd in part*, 161 F.4th 1048 (7th Cir. 2025), 2026 WL 1223250 (7th Cir. May 5, 2026) (concluding that "ICE lacked statutory and regulatory authority to engage in its policy of issuing I-200 warrants to collaterals in the field without the concurrent or prior issuance of an NTA").  Accordingly, the Court concludes that Luis was not arrested pursuant to a valid warrant under 8 U.S.C. § 1226(a).

### C.  *Warrantless Arrest Pursuant to 8 U.S.C. § 1357(a)(2)*

The fact that Luis's arrest warrant was invalid does not end the inquiry, however, as Luis is subject to mandatory detention under § 1225(b)(2), and an arrest warrant is not necessary for such aliens.  *See* ECF No. 6 at 10; *Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a).") (quotation omitted).  But this does not mean that ICE can simply arrest anyone who is subject to mandatory detention.  Rather, ICE could detain Luis only if it "first compl[ied] with 8 U.S.C. § 1357(a), which addresses federal immigration officials' authority to make warrantless arrests."  *Francisco M.A.*, 2026 WL 1229701, at *2.  Under § 1357(a)(2), an immigration official may conduct a warrantless arrest only "if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation *and* is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added).

-8-

The Eighth Circuit has construed "the term 'reason to believe' in § 1357(a)(2)" to mean "constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).  Here, it appears that ICE's probable-cause determination was based solely on Luis's possession of a foreign identification card.  *See* ECF No. 6 at 2; Robinson Decl. Ex. B at 2.  The Court will assume that this is sufficient to establish probable cause under § 1357(a)(2).  *See Martha C.G.P.*, 2026 WL 1329577, at 3; *Quintana*, 623 F.3d at 1241.  Even so, respondents have not alleged that ICE believed that Luis was "likely to escape before a warrant c[ould] be obtained for his arrest."  8 U.S.C. § 1357(a)(2).  And, of course, "[t]o hold that a noncitizen is likely to escape merely because they are removable would effectively collapse § 1357(a)(2)'s two distinct requirements into one." *Francisco M.A.*, 2026 WL 1229701, at *3; *see also Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1007 (N.D. Ill. 2016) ("Nor can it be the case that, simply by being potentially removable, an alien must be deemed to be likely to evade detention by ICE.  Such a reading would render the limitations on warrantless arrest created by 8 U.S.C. §§ 1226(a) and 1357(a)(2) meaningless.").

Because respondents have not provided any basis for the Court to conclude otherwise, the Court finds that Luis's warrantless arrest was not lawful under § 1357. The Court will therefore order Luis's release as the "typical remedy" for unlawful detention. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for

unlawful executive detention.  The typical remedy is, of course, release.") (citations omitted); *see also Ahmed M.*, 2026 WL 25627, at *3 ("Release is an available and appropriate remedy for detention that lacks a lawful predicate.") (quoting *Vedat C. v. Bondi*, No. 25-CV-4642 (JWB/DTS), ECF No. 9 at 6 (D. Minn. Dec. 19, 2025) (cleaned up).[4]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.      Petitioner's petition for a writ of habeas corpus [ECF No. 1] is GRANTED IN PART.

2.      Respondents must release petitioner within 48 hours of entry of this order.

3.      The remainder of petitioner's petition [ECF No. 1] is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 26, 2026                                    /s/ Patrick J. Schiltz
                                                       Patrick J. Schiltz, Chief Judge
                                                       United States District Court

---

[4]Because the Court has found that ICE violated federal immigration law, the Court need not decide whether ICE *also* violated the Constitution as alleged in Luis's petition.